## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHANI N., AND J.G.,<br><br>   Plaintiffs,<br><br>v.<br><br>GILLETTE CHILDREN'S SPECIALTY HEALTHCARE MEDICAL BENEFIT PLAN,<br><br>   Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Case No. 4:22-cv-00070-RJS-PK<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Paul K. Kohler |

   This case arises under the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiffs Shani N. and J.G. allege Defendant Gillette Children's Specialty Healthcare Medical Benefit Plan (the Plan) violated ERISA in denying payment for treatment J.G. received at residential facilities in Utah and Arizona.  Though all parties reside in Minnesota, Plaintiffs filed suit in this district against the Plan, asserting a lone claim for denial of Plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).[1]

   Now before the court is the Plan's Motion to Dismiss or, in the Alternative, to Transfer Venue (Motion).[2]  In it, the Plan first argues it is not subject to personal jurisdiction in Utah, and for the same reasons, venue is improper.  Second, it argues to the extent Plaintiffs intended to allege in their lone claim a breach of fiduciary duty, that claim is inadequately pled.  Finally, the Plan argues in the alternative under 28 U.S.C. § 1404(a) that if dismissal is not warranted, the court should transfer venue to Minnesota "for the convenience of parties and witnesses, [and] in

---

[1] Dkt. 2, *Complaint*, at 8-9 (using court' ECF pagination). 29 U.S.C. § 1132(a)(1)(B) states an ERISA plan participant or beneficiary may file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."

[2] Dkt. 12.

the interest of justice. . . ."  For the reasons explained below, the court DENIES the Motion to

Dismiss, but GRANTS Defendant's Alternative Motion to Transfer Venue under § 1404(a).

## BACKGROUND

The Plan moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack

of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim—in

addition to moving alternatively for transfer of venue under § 1404(a).  In evaluating these

grounds for dismissal, the court may consider facts and evidence outside the Complaint but must

accept all uncontroverted well-pled allegations in the Complaint and resolve factual ambiguities

in Plaintiffs' favor.[3]

The following facts are drawn from Plaintiffs' Complaint[4] and two declarations from

Karen Brady, Vice President of People Strategy at Gillette Children's Specialty Healthcare

(Gillette), the Plan Sponsor.[5]

Plaintiff Shani N. is Plaintiff J.G.'s mother.[6]  Both reside in St. Paul, Minnesota.[7]  Shani

N. works for Gillette,[8] a non-profit corporation registered and domesticated in St. Paul.[9]  Gillette

has no offices, locations, or employees in Utah.[10]

---

[3] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (noting that court considering Rule 12(b)(6) motion to dismiss should "assume the veracity of" well-pleaded allegations in the complaint in determining whether a plausible cause of action is stated), *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008) (noting plaintiff bears burden at motion to dismiss stage of making prima facie showing of personal jurisdiction and that when evaluated on the basis of the complaint and affidavits, well-pled allegations are taken as true and any "factual disputes in the parties' affidavits must be resolved in plaintiff's favor" (citations omitted)), and *Hancock v. Am. Tel. & Tel. Co.,* 701 F.3d 1248, 1260 (10th Cir. 2012) (noting in face of Rule 12(b)(3) challenge, "a plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but 'only to the extent that such facts are uncontroverted by defendant's' evidence." (quoting *Pierce v. Shorty Small's of Branson Inc.,* 137 F.3d 1190, 1192 (10th Cir.1998)).
[4] Dkt. 2.
[5] Dkt. 13, *First Declaration of Karen Brady* (*First Brady Decl.*) and Dkt. 22-1, *Second Declaration of Karen Brady* (*Second Brady Decl.*).
[6] Dkt. 2, *Complaint*, at ¶¶ 1-2.
[7] *Id.*
[8] *Id.* at ¶ 1.
[9] Dkt. 13, *First Brady Decl.,* at ¶ 3.
[10] *Id.* at ¶¶ 4-5.

Plaintiffs were covered by Gillette's Medical Benefit Plan, 'NationalOne Plan,' a self-insured employee welfare benefit plan as defined under ERISA.[11]  Claims made under the Plan are administered by HealthPartners Administrators, Inc., another Minnesota non-profit corporation and managed care organization.[12]

J.G. has struggled with multiple mental health conditions.[13]  She received residential mental health treatment at Wingate Wilderness Therapy (Wingate) in Kanab, Utah, from June 7 through August 20, 2018.[14]  She also received treatment from August 21, 2018, through an unspecified date at Spring Ridge Academy (Spring Ridge), a residential mental health treatment facility in Arizona.[15]  Neither facility is in-network under the Plan.[16]

At some point, the Plan received a request for authorization of J.G.'s treatment at Wingate and related claims for payment.[17]  The Plan, through HealthPartners, denied payment for J.G.'s treatment at Wingate on the grounds that the facility is a 'wilderness program' and wholly excluded from coverage.[18]  Plaintiffs appealed this decision, but HealthPartners repeatedly upheld the denial.[19]

---

[11] *Id.* at ¶ 6.
[12] *Id.* at ¶¶ 7-8.
[13] Dkt. 2, *Complaint,* at ¶ 7.
[14] *Id.* at ¶ 2.
[15] *Id.*
[16] Dkt. 13, *First Brady Decl.*, at ¶¶ 13-14.
[17] The Plan claims it only received an authorization request on June 26, 2018, a few weeks after J.G. already entered Wingate, and cites for this proposition the documents attached at Exhibit 4 to Brady's First Declaration (Dkt. 13). Those documents are letters from HealthPartners dated August 21 and July 3, 2018, as well as some claim file notes. None state when an authorization request was received for the Wingate treatment.  But Plaintiffs do not directly dispute that they did not seek pre-treatment authorization for care at Wingate in Utah.  *See* Dkt. 20 at 4 (noting the failure to seek authorization may result in a reduction of coverage but not "rescission of coverage.").  The court does not find material whether the Plan did or did not have advance opportunity to authorize coverage in evaluating the Plan's connections to Utah and due process issue related to any burden in litigating here.  The court finds there is personal jurisdiction over Utah whether the Plan did or did not have that opportunity.
[18] Dkt. 2, *Complaint*, at ¶¶ 8-18.
[19] *Id.*

HealthPartners approved only partial payments for J.G.'s treatment at Spring Ranch, up to when J.G. turned eighteen years of age.[20]  At that point, HealthPartners denied further payment on the grounds of her age.  HealthPartners again upheld this denial throughout the prelitigation appeals process.[21]

Following these denials and after exhausting their appeals, Plaintiffs filed this action against the Plan, asserting a lone cause of action for Plan benefits under 29 U.S.C. § 1132(a)(1)(B).[22]  Plaintiffs in their Complaint seek to recover the "amount owed for J.G.'s medically necessary treatment," pre- and post-judgment interest, and attorney fees and costs.[23]

The Plan responded by filing the present Motion,[24] asking the court to dismiss the action entirely pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) on the grounds that it is not subject to personal jurisdiction in Utah and venue is improper.  The Plan also moves for dismissal pursuant to Rule 12(b)(6) of "any claim for breach of fiduciary duty" Plaintiffs may have tried to state in their lone cause of action.  The Plan argues any such a claim is defective because Plaintiffs have both failed to allege a requisite injury to the Plan itself and have not named as a Defendant any Plan fiduciary.  In addition to these grounds for dismissal, the Plan alternatively asks the court to transfer this case to Minnesota pursuant to § 1404(a).

Plaintiffs opposed the Plan's Motion.[25]  In doing so, Plaintiffs inexplicably add two previously-unnamed Defendants to the Opposition's case caption—Gillette and HealthPartners.[26]

---

[20] *Id.*
[21] *Id.* at ¶¶ 19-30.
[22] *Id.* at 6.  The three paragraphs in the claim are misnumbered as beginning at ¶ 2 but going through ¶ 31.
[23] *Id.* at ¶¶ 33-36.
[24] Dkt. 12.
[25] Dkt. 20.
[26] *Id.* at 1.

Setting that aside, Plaintiffs argue the Plan's Motion should be denied because the 'Defendants'[27] are subject to personal jurisdiction[28] and venue is appropriate in Utah.[29]  Plaintiffs further argue any flaw in pleading their cause of action was due to counsel "inadvertently omit[ing] a citation to 29 U.S.C. § 1132(a) as well as to 'equitable relief' as a result of having a new paralegal using the wrong template for Complaints, and due to a surge of cases post the [COVID] epidemic."[30]  Finally, Plaintiffs argue that if the court is inclined to transfer the case under § 1404, it should move to Arizona rather than Minnesota.[31]

In Reply,[32] the Plan reiterates its initial arguments supporting dismissal, and further argues Plaintiffs' newly-added parties are not proper Defendants, and newly-offered allegations should not be considered at this stage—at least until a motion to amend has been filed.  The Plan also argues Plaintiffs have not shown that Arizona is a more convenient forum than Minnesota, where all parties reside.

**DISCUSSION**

## I.       Personal Jurisdiction

To find personal jurisdiction over the Plan in this federal question case arising under ERISA, the court first "determine[s] '(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'"[33]  ERISA authorizes nationwide service of process.  29

---

[27] In addition to adding Gillette and HealthPartners to the case caption, Plaintiffs in their Opposition consistently refer to "Defendants."  Plaintiffs have filed no Motion to Amend seeking leave to add Defendants.  The court observes at this time, there is only one Defendant in this action—the Plan.

[28] *Id.* at 2.

[29] *Id.* at 5-7.

[30] *Id.* at 11.

[31] *Id.* at 7-10.

[32] Dkt. 22.

[33] *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997)).

U.S.C. § 1132(e) provides an action brought under it "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."[34] Thus, there is personal jurisdiction over the Plan if it comports with due process.

"[I]n federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment."[35]  For personal jurisdiction to violate Fifth Amendment due process principles, its exercise must "actually infringe[]" the Plan's liberty interests, with litigation in Utah "so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent."[36]  But in our "age of instant communication, and modern transportation," with lessened burdens of litigating in distant places,[37] "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[38]

As there has been no evidentiary hearing, and the Plan's challenge relies on affidavits and other written materials, Plaintiffs bear the burden to make a prima facie showing of jurisdiction.[39]  But the Plan bears the burden to show that jurisdiction in this forum will violate due process concerns.[40]

In evaluating whether the Plan has met its burden to show a due process violation, the Tenth Circuit directs the court to consider the following factors:

---

[34] *See also Peay,* 205 F.3d at 1210 (noting "[t]here is no question the last clause of § 1132(e)(2) authorizes nationwide service of process.").
[35] *Peay*, 205 F.3d at 1210 (citations omitted).
[36] *Id.* at 1212 (citations omitted).
[37] *Id.* at 1213 (citations omitted).
[38] *Id.* at 1212 (citations omitted).
[39] *Dudnikov,* 514 F.3d at 1070 (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th 1995)).
[40] *Peay,* 205 F.3d at 1212 (noting "burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" (brackets in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) and citing *Republic of Panama.,* 119 F.3d at 942)).

(1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[41]

Applying these factors, the court concludes the Plan has not demonstrated its "liberty interests actually have been infringed."[42]  It is true the Plan has few, if any, contacts with Utah. It is headquartered in Minnesota and has no employees or offices in Utah.[43]  And while Plaintiffs allege without evidence that HealthPartners, the Plan's claim processing affiliate, "likely" processed the claims in Utah,[44] the Plan disputes that allegation and provides sworn testimony and documentary evidence showing HealthPartners processed the claims in Minnesota.[45]  This factor weighs against personal jurisdiction.

But under the "broad standard" the Tenth Circuit outlined in *Peay*, the court finds the remaining factors are either neutral or support a finding of personal jurisdiction.[46]  Initially, "though [the Plan] may be inconvenienced by defending this action in Utah, [it] cannot show this burden rises to the level of constitutional concern."[47] The Plan has retained capable, ERISA-specialized defense counsel in Utah, has not disputed it has the resources to litigate in Utah, and while "Utah may be some distance from [Minnesota], modern methods of communication and

---

[41] *Peay,* 205 F.3d at 1212 (citations omitted).
[42] *Id.* (citations omitted).
[43] *See* Dkt. 12, *Motion*, at 2.
[44] *See* Dkt. 20, *Plaintiffs' Opposition*, at 6.  Plaintiffs cite no address where the claims were "likely" processed, nor any evidence for this claim. The Plaintiffs simply state "[t]he Wingate claims were processed by [the Plan's] claim administrator, HealthPartners, which is a dba of Cigna, which has claims processing offices in Utah."  *Id.*
[45] *See* Dkt 22-1, *Declaration of Karen Brady* (Second Brady Decl.).
[46] *Peay,* 205 F.3d at 1213.
[47] *Id.*

transportation greatly reduce the significance of this physical burden."[48]  And while the dockets in this district are more congested than in Minnesota—a factor discussed with regard to § 1404 below—the court cannot conclude that any resulting delay in addition to the aforementioned inconvenience will violate due process.

Next, the Plan correctly concedes that "most ERISA cases do not involve discovery"—a factor weighing in favor of personal jurisdiction—but then argues that Plaintiffs "purport to assert claims under the Mental Health Parity Act" which may require discovery involving witnesses in Minnesota.[49]  The court concludes the Plan's argument is speculative and does not support finding—at least at this time—that litigation in Utah would be unconstitutionally burdensome.  First, there is no Parity Act claim asserted in the Complaint at this time—only a lone claim for Plan benefits brought under the part of ERISA applicable to claims for benefits. Whether the Plaintiffs can state a Parity Act claim in the future is unknown.  Further, to the extent that grounds for a putative Parity Act claim can be discerned from the Complaint, they seem to be that the Plan on its face 1) includes a Plan's Wilderness Exclusion set forth only in the mental health benefits section, rather than the Plan's general exclusions; and 2) only mental health benefits to persons under the age of eighteen.[50]  It is conjecture now to presume there will be extensive and unduly burdensome discovery to pursue on these issues—which may never materialize.

And the nature of the regulated activity and impact beyond Minnesota is either neutral or weighs in favor of personal jurisdiction in Utah.  The Plan is a health care plan governed by federal law, that as Plaintiffs argue, can anticipate paying at time for treatment outside of

---

[48] *Id.*
[49] Dkt. 12, *Motion*, at 10.
[50] Dkt. 2, *Complaint*, at ¶¶ 12, 15, and 23.

Minnesota.[51]  Indeed, in this case, claims were made concerning treatment in two states outside Minnesota.  And it bears noting the case the Plan cites on this point, *Walter B. v. Kaiser Foundation Health Plan, Inc.*, did not grapple with personal jurisdiction issues at all, but was a case concerning standing and a § 1404(a) venue challenge.[52]

On the whole, the Plan has not met its burden to demonstrate that litigating in Utah will unfairly and severely disadvantage them.  Therefore, though perhaps close, the court finds the exercise of personal jurisdiction does not violate principles of due process.[53]  The Plan's Motion to Dismiss on this basis is denied.[54]

## II.    Venue

Rule 12(b)(3) and 28 U.S.C. § 1406 provide that a case may be dismissed for having been brought in an improper venue, but § 1406 further provides such a case may also be transferred to a district in which it could have been brought if transferal serves the interest of justice.[55]  In an ERISA action, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."[56]  For purposes of venue, a corporation "resides" wherever there is personal jurisdiction over it.[57]  Because the court concludes there is personal jurisdiction over the Plan in this district, it follows that venue is not

---

[51] Dkt. 20, *Plaintiffs' Opposition,* at 4.

[52] 2008 WL 11509906 (D.Utah Nov. 25, 2008) (granting venue transfer from Utah to California under § 1404(a)).

[53] *See Michael L. v. Anthem Blue Cross & Blue Shield*, No. 4:21-CV-32-DN-PK, 2021 WL 5051557, at *3 (D. Utah Oct. 29, 2021) (finding personal jurisdiction despite few contacts with the forum state and a less congested docket in an alternative venue).

[54] Because the court does not conclude Plaintiffs' choice of forum is unconstitutionally inconvenient, it does not evaluate whether a federal interest in litigating in Utah outweighs the burden imposed on the Plan.  *See Peay*, 205 F.3d at 1214 (where "defendants have not shown that the . . . assertion of jurisdiction will infringe on their liberty interests, we need not balance the federal interests at stake in this suit.").

[55] 28 U.S.C. § 1406(a).

[56] 29 U.S.C. § 1132(e)(2).

[57] *Peay,* 205 F.3d at 1210 n.3 (citing 28 U.S.C. § 1391(c)).

improper.  Thus, as with personal jurisdiction, the Plan's Motion to Dismiss on the ground that venue is improper is denied.

But the Plan moves in the alternative to have this case transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a), which states, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[58]  In most cases, a party moving to transfer a case under § 1404 bears the burden of showing the current forum is inconvenient.[59]  The court then considers various factors to "decide whether, on balance, a transfer would serve 'the convenience of parties' ... and otherwise promote 'the interest of justice.'"[60]  These factors, evaluated below, are:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[61]

### A.    Plaintiffs' Choice of Forum

A plaintiff's choice of forum "should rarely be disturbed."[62]  But that choice of forum "receives less deference . . . if the plaintiff does not reside in the district."[63]  And "little weight" is given to a plaintiff's chosen forum when "facts giving rise to the lawsuit have no material relation or significant connection . . ."[64]

---

[58] 28 U.S.C. § 1404(a).
[59] *See Chrysler Credit Corp. v. Cnty. Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).
[60] *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (quoting 28 U.S.C. § 1404 (a)).
[61] *Chrysler Credit Corp.*, 928 F.2d at 1516 (quotations omitted).
[62] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quotation omitted).
[63] *Id.* (citation omitted).
[64] *Id.* at 1168 (quotation omitted).

Under these principles, the court gives negligible weight to the Plaintiffs' choice to sue in Utah. Indeed, considering that all parties and the Plan's non-party claims administrator reside in Minnesota, this factor weighs in favor of transfer. Moreover, under the law applied in this district, any breach occurred in Minnesota, where the Plan participant who will be left to pay for J.G.'s treatment resides.[65] In contrast, the only evident connection to Utah is that J.G. was treated in the state—in addition to treatment she received in Arizona.

Plaintiffs speculatively claim in their briefing concerning personal jurisdiction and venue that claims for the Wingate treatment were "likely processed in Utah,"[66] going so far as to argue that "deference to Plaintiffs' decision to litigate" in Utah is warranted because the "pre-litigation appeal letters were written in Utah."[67] These allegations are not in their Complaint; are unsupported by any evidence provided in conjunction with the briefing; are contradicted by the Minnesota return addresses on the prelitigation explanations of benefits and denial letters;[68] and have been specifically disputed in a sworn declaration from Gillette employee Karen Brady.[69] While the court is to resolve factual disputes in Plaintiffs' favor, Plaintiffs cannot rest on

---

[65] In *F.F. v. Cap. BlueCross*, the undersigned noted:

> Utah courts consistently hold the breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits. This is because under ERISA, the duty is owed the plan participant. Thus, regardless [of] whether the services or the denial decisions occurred out-of-state, any breach of duty owed under the plan, occurs at the place where the plan participant resides and where the payment is to be made.

2023 WL 2574367, at *2 (D. Utah Mar. 20, 2023) (internal quotations and citations omitted), *see also IHC Health Servs., Inc. v. Eskaton Properties, Inc.,* 2016 WL 4769342, at *4-5 (D. Utah Sept. 13, 2016) (finding ERISA breach occurred in California, where plan participant resided, and not Utah, where the treating provider resided and treatment was provided), *Island View Residential Treatment Ctr. v. Kaiser Permanente*, 2009 WL 2614682, *2 (D. Utah Aug. 21, 2009) (noting that "[s]everal cases establish that, under ERISA, the duty is owed to the plan participant and any breach of duty owed under the plan, occurs at the place where the plan participant resides.") (citations omitted).
[66] Dkt. 20, *Plaintiffs' Opposition,* at 6.
[67] *Id.* at 8.
[68] Dkt. 13, *First Brady Decl.*, at Exh. 4; Dkt. 22-1, *Second Brady Decl.*, at Exhs. 1-2.
[69] Dkt. 13, *First Brady Decl.* at ¶¶ 9, 11; Dkt. 22-1 at ¶ 5.

unsupported factual claims in the face of sworn testimony and documentary evidence to the contrary.

**B.     Accessibility of Witnesses and Proof and Obstacles to a Fair Trial**

As noted above, this ERISA case for Plan benefits may require no discovery, rendering immaterial a discussion of accessibility to proof and witnesses, and subpoena power over trial witnesses.  But if Plaintiffs eventually allege a Parity Act claim resulting in discovery or trial, the relevant witnesses and documents will likely be found in Minnesota where the Plan is administered and claims processed, making proceedings there less costly and more practical—particularly where Minnesota is where those witnesses may be compelled to testify.[70]  These considerations thus weigh slightly in favor of transfer to Minnesota.

**C.     Docket Congestion**

As the Plan briefs, the case disposition time from the date of filing is far higher in the District of Utah (11.5 months) as compared to the District of Minnesota (5.5 months).[71]  This weighs in favor of a transfer to Minnesota.

**D.     Other Considerations**

Plaintiffs argue their choice of a Utah forum should not be disturbed because they may be unable to find counsel in Minnesota, stating, "[a]ttorney Laura Nielson can attest to the best of her knowledge, the other attorneys who specialize in ERISA mental health claims refuse to take cases that are worth less than six figures."[72]  The court finds this unpersuasive.  There is no declaration supporting this claim, no explanation for its factual basis in general or with specific

---

[70] Federal Rule of Civil Procedure 45(c)(1) provides that a subpoena may compel appearance only: "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."
[71] Dkt. 12, *Motion*, at 17.
[72] Dkt. 20, *Plaintiff's Opposition*, at 8.

application to the Minnesota bar, and no description of efforts to retain counsel in Minnesota, where the Plaintiffs reside.  Nor is there any explanation why Utah counsel could not, with some effort to find local counsel in Minnesota, represent her Minnesota clients.

In short, transferring this action to Minnesota is warranted under § 1404(a).  All parties are in Minnesota, the breach occurred in Minnesota, any potential witnesses or discovery are largely in Minnesota, and the courts dockets are less congested in Minnesota.

In resisting this result, Plaintiffs argue that if the court is inclined to transfer this case at all, it should go to Arizona.  They note this is appropriate where they "consent" to venue there and the Plan directly paid a residential facility for part of J.G.'s treatment there and thus a breach by the Plan took place there because, they contend under a recent decision from this district, a breach occurs where the plan participant resides and "where the payment [was] made."[73]

But for the same reasons venue is inconvenient in Utah for the Minnesota parties and witnesses, it is just as inconvenient in Arizona.  Thus, Plaintiffs' arguments favoring venue in Arizona are just as unpersuasive.

And Plaintiffs' contention that a breach took place in Arizona is not supported by the case they purport to quote, *F.F. v. Capital BlueCross,* 2023 WL 2574367 (D.Utah March 20, 2023).  There, the undersigned stated:

> While the Tenth Circuit has not interpreted this phrase, Utah courts consistently hold the breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits. This is because under ERISA, the duty is owed the plan participant. Thus, regardless [of] whether the services or the denial decisions occurred out-of-state, any breach of duty owed under the plan, occurs at the place where the plan participant resides and where the payment is to be made.[74]

---

[73] *Id.* at 8-9 (quoting *F.F. v. Capital BlueCross,* 2023 WL 2574367 at *2 (D.Utah March 20, 2023) (brackets and alteration added by Plaintiffs)).
[74] 2023 WL 2574367 at *2 (quotations and citations omitted).

This language states a breach of an ERISA plan occurs where the participant resides –where payment "is to be made"—because the duty of payment is to the participant.  The participant in this case is Shani N.  She as well as her daughter J.G. reside in Minnesota.

Plaintiffs quote *F.F.* in their Opposition but alter the undersigned's language—bracketing out "is to be" and changing it to state that any breach occurs "'at the place where the plan participant resides' and 'where the payment [*was*] made'" in an apparent attempt to support an argument that because the Plan allegedly made some payments directly to the treating facility in Arizona, a breach occurred there.  This is an incorrect statement of law contradicted by an accurate recitation of the relevant passage.  Because the bracketing makes the misstatement appear intentional, it also may be a violation of counsel's ethical duties as an officer of the court.  Future misstatements of this sort may result in an order to show cause from this court.

## C.     Failure to State a Claim

The Plan moves under Rule 12(b)(6) to dismiss any claim Plaintiffs may be making for breach of fiduciary duties on the grounds that they failed to allege a requisite injury to the Plan itself and have not named the Plan fiduciary as a Defendant.  Plaintiffs respond by first conceding they inadvertently "omitted a citation to 29 U.S.C. § 1132(a) as well as to 'equitable relief' as a result of having a new paralegal using the wrong templates for Complaints, and due to a surge of cases post the [COVID] pandemic."[75]  But they contend Defendants "clearly understood that Plaintiffs' [sic] intended to bring a suit for breach of fiduciary duty" because the Complaint has a heading stating "CAUSES OF ACTION," in the plural, and there are unspecified references to such a claim in the Complaint.[76]  Still, Plaintiffs offer that if the case

---

[75] *Id.* at 11.
[76] *Id.*

remains in Utah, they "will move to amend the Complaint" but if it is transferred, they will "refile the Complaint" with new language they believe will remedy the identified deficiencies.[77]

In deference to the Minnesota court receiving the case, the court will not decide the substantive Rule 12(b)(6) issues.  That part of the Motion is denied without prejudice to refile.

But the court sees an obligation to express some concern regarding Plaintiffs' counsel's blaming a paralegal and surge of cases on an apparently conceded error in pleading—in addition to inexplicably adding two previously-unnamed and unserved Defendants to a case caption, asserting unsupported facts in an effort to defeat the Plan's Motion, misstating a case holding, and operating under an apparent belief that if the case is transferred to Minnesota a new Complaint may be filed without a Motion to Amend.  Counsel has an obligation to review the pleadings they sign and be familiar with and comply with the Rules of Civil Procedure— regardless of whether they have had a surge of cases.

## CONCLUSION

The Motion to Dismiss is DENIED IN PART and GRANTED IN PART:

1.     The Motion to Dismiss for lack of personal jurisdiction and improper venue is DENIED.

2.     The alternative relief sought in the Motion, for transfer under § 1404(a), is GRANTED.  The action shall be transferred to the District of Minnesota.

3.     The Motion seeking relief under Rule 12(b)(6) is DENIED without prejudice to be refiled before the Minnesota court receiving this transferred action.

---

[77] *Id.*

The Clerk of Court is directed to transfer this action to the District of Minnesota and close this case.

SO ORDERED this 8th day of August, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

16